IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TAMMY BESS, et al.,

               Plaintiffs,

v.                                           CIVIL ACTION NO.  2:08-cv-01020

KANAWHA COUNTY BOARD OF EDUCATION, et al.,

               Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are the defendants' motions to dismiss the Complaint.  Defendants Kanawha County Board of Education, Lois McLeery, Candace Adams-Strader, and Sandy Boggs filed a Motion to Dismiss on October 6, 2008 [Docket 10].  Defendant Sarah Hammar filed a Motion to Dismiss on October 8, 2008 [Docket 14].  The plaintiffs filed responses to these motions on October 29, 2008, and the defendants filed replies on November 11, 2008.  As explained below, the defendants' motions are **GRANTED** in part and **DENIED** in part.

**I. Background**

    **A. Factual Background**

This case arises from the defendants' treatment of plaintiff John Doe.  Doe is seventeen years old and has Down's Syndrome.  Though currently in high school, Doe was a student at East Bank Middle School ("East Bank") from 2003 through 2007.   Doe's high school and East Bank are located in Kanawha County, West Virginia.  (Compl. ¶ 2-3 [Docket 1].)  Because of his intellectual disability, the Individuals with Disabilities Education Act (the "IDEA") requires that Doe be

provided a Free Appropriate Public Education ("FAPE").  20 U.S.C. §§ 1400-1482.  In order to accommodate his learning needs pursuant to the IDEA, Doe is educated pursuant to an Individual Education Program ("IEP").  The defendants are the Kanawha County Board of Education (the "Board"); Sarah Hammar, Doe's teacher at East Bank; Lois MacLeery, Doe's teacher's aide at East Bank; Candace Adams-Strader, the principal at East Bank; and Sandy Boggs, a Board employee.  Doe's mother, Tammy Bess, brings this case individually and as Doe's guardian and next friend.

Doe's lawsuit against the defendants is based in part on a series of handwritten notes that Doe's teachers sent to Ms. Bess.  For various reasons, each of the notes suggested that Bess keep Doe home from school on particular days.  Although the plaintiffs assert that "the Defendants previously sent similar requests to Ms. Bess on a periodic basis, starting in 2004," the Complaint highlights three particular notes.

The first note identified by the Complaint was sent to Ms. Bess on April 5, 2007.  In that note, Doe's teacher, Ms. Hammar, explained to Ms. Bess that the following day would be "hectic," that "most of [her] students were not coming" to school, and that Doe's teachers would likely "have to cover classes somewhere else in the building."  (Pls.' Resp. to Def. Board's Mot. Dismiss, Ex. 1 ¶ 14 [Docket 19-1].)  The note explained that if Bess sent Doe to school, "it [would] be hard for [the teachers] to watch and work with [Doe]."  (*Id.*)  Therefore, if Bess kept Doe home from school, he would not be counted absent.  (*Id.*)  On April 22, 2007, Hammar sent Bess a second note offering to allow Doe to miss another day of school, because he had come to school "mad at the world" that day, and that it had taken the teachers a while to calm him down.  (*Id.* at 13.)  In her note Hammar wrote, "[Doe] can have a long weekend if you want to keep him home," but she explained, "You don't have to keep him home unless you want to."  (*Id.*)  Hammar sent Bess a third note on May 9,

2

2007, again suggesting that Bess keep Doe at home for five days while the teachers administered a standardized test to other students. (*Id.* at 15.) Fearing retaliation if she sent Doe to school, Bess raised her concerns through an intermediary to the East Bank principal, Ms. Strader. Strader advised Bess to ignore the letters and send Doe to school. (Compl. ¶ 12.)

The plaintiffs allege that "during this same time period," Doe's teachers refused to let him use the restroom as needed, and, as a result on May 17, 2007, Doe defecated on himself in class. (*Id.* ¶ 13.) Furthermore, they assert that on June 1, 2007, after Doe had spilled juice on himself, Ms. MacLeery took Doe to the restroom and made him pull down his pants and underwear to determine if he had urinated on himself. (*Id.* ¶ 14.) That same day, Bess learned that Doe had been excluded from art, music, and gym classes for approximately two years. (*Id.* ¶ 16.)

In response to these events, Ms. Bess attempted to file a grievance with the Board. (*Id.* ¶ 17.) Bess alleges that Board employee Sandy Boggs told her that the Board would investigate the situation, but that Boggs otherwise discouraged her from filling a formal administrative complaint with the Board. (*Id.*). Based on this representation, Bess refrained from filing a complaint. A few weeks later, in August 2007, having received no communication from the Board, Bess requested a formal-complaint form from the Board. (*Id.* ¶ 18.) Her request went unanswered, and no complaint form was mailed to her. (*Id.*)

On September 13, 2007, Ms. Bess filed a formal administrative complaint with the Board. On November 1, 2007, the West Virginia Department of Education's Office of Assessment and Accountability (the "OAA") issued a Letter of Findings in which it concluded that Doe had been denied a free appropriate public education. (*Id.* ¶ 19.) The Letter of Findings ordered corrective actions to eliminate the identified deficiencies in Doe's education. (*Id.*) On December 11, 2007,

the OAA determined that corrective action had been completed and that Doe's case was closed. (*Id.*)

### B. Procedural History

On March 26, 2008, the plaintiffs filed suit in this court. Their complaint asserted constitutional violations under 42 U.S.C. § 1983, violations of state and federal statutes, and several state torts. *See* Complaint, *Bess et al. v. Kanawha County Bd. of Educ. et al.*, No. 2:08-cv-00203 (S.D. W. Va. June 20, 2008.) On June 20, 2008, the plaintiffs' claims were dismissed without prejudice, because the plaintiffs had failed to exhaust their administrative remedies, as required by the IDEA

The plaintiffs then sought to exhaust their administrative remedies. On June 25, 2008, the plaintiffs filed a due process complaint with the West Virginia Department of Education, in accordance with the state administrative procedures for resolving IDEA claims. (Compl., Ex. 1.) On August 4, 2008, the plaintiffs and the Board entered into a settlement agreement resolving all of the IDEA-based issues raised in the due process complaint. Notably, paragraph 17 of the settlement agreement states, "By signing this agreement, Ms. Bess is not waiving her right to file a lawsuit in federal court concerning claims that are not related to the IDEA." (*Id.* at Ex. 2 ¶ 17.)

Having resolved the due process complaint, the plaintiffs again sought relief in federal district court. On August 22, 2008, the plaintiffs filed the Complaint, initiating this action. The Complaint alleges facts nearly identical to those alleged in the due process complaint. The Complaint sets forth several claims, including: (1) constitutional claims under 42 U.S.C. § 1983, (2) claims that the defendants violated several state statutes, including W. Va. Code sections 18-8-7 and 61-2-9; (3) a claim under the West Virginia Human Rights Act, W. Va. Code section 5-11-et seq.

(the "WVHRA");  (4) claims for violations of the Americans with Disabilities Act, 42 U.S.C. §

12101-12102, 12111-12213 (the "ADA"), and  § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("§

504");  and state-law claims for the torts of outrage;  assault and battery;  and negligent hiring,

retention, and supervision of employees.[1]

By their motions, the defendants have asserted several reasons why the Complaint must be

dismissed.  First, they assert that the plaintiffs have failed to exhaust their administrative remedies,

as required by the IDEA.  Second, they contend that the settlement agreement bars any recovery

sought in this case.  Third, the defendants claim that they are entitled to qualified immunity.  And

finally, they maintain that the plaintiffs' claims lack merit.

## III. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.

Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."  *Id.*  Rather, "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.

## IV.  Discussion

### A.  Claims against Sandy Boggs

---

[1]     The plaintiffs also asserted a negligence claim in their Complaint, but
subsequently withdrew it.  (Pls.' Mem. Resp. to Def. Board's Mot. Dismiss 5 [Docket 20].)

Before addressing the claims against all of the defendants, I must separately dispose of the claims against Sandy Boggs.  The Complaint asserts that Ms. Boggs, a Board employee, violated the plaintiffs' rights by "discourag[ing] Plaintiffs from filing a formal complaint, claiming that she was going to lead an investigation but never did so."  (Compl. ¶ 8.)  The Complaint does not, however, identify any cognizable cause of action under which Boggs is liable.  Nor have the plaintiffs alleged any facts that could plausibly support a claim against her.  The motion to dismiss the Complaint against her is therefore **GRANTED**, and she is **DISMISSED** as a defendant.

### B.  Administrative Exhaustion

The defendants first contend that the Complaint must be dismissed because the plaintiffs failed to exhaust administrative remedies, as required by the IDEA.  The defendants maintain that the Complaint concerns conduct that occurred from 2003-2007, but that the due process complaint only covered conduct that took place from 2006-2007.  Therefore, they argue, the plaintiffs have not exhausted their administrative remedies for any claims arising out of conduct that occurred between 2003 and 2006.  (Def. Board's Mem. Supp. Mot. Dismiss 6 [Docket 11].)

The IDEA explicitly authorizes an IDEA claimant to bring civil actions under the Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and "other Federal laws protecting the rights of children with disabilities . . . ."  20 U.S.C. § 1415(l).  Thus, a plaintiff pursuing IDEA remedies may also pursue alternative theories of recovery, even if those alternative theories are based on facts identical to those in an IDEA claim.  *Sellers by Sellers v. School Bd. of Mannassas*, 141 F.3d 524, 530 (4th Cir. 1998).  But when a plaintiff raises alternative claims that are also cognizable under the IDEA, the plaintiff is "required to exhaust [IDEA] administrative remedies to the same degree as would have been required had the suit been brought under the

[IDEA]." *Doe v. Alfred*, 806 F. Supp. 1092, 1098-99 (S.D. W. Va. 1995) (internal quotation marks and citations omitted).  This exhaustion requirement reflects "Congress'[s] view that the needs of handicapped children are best accommodated by having the parents and local education agency work together to formulate an individualized plan for each handicapped child's education."  *Id.* at 1096. It also serves functions such as "(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decision by giving the agency the first opportunity to correct any error."  *Id.* at 1097 (quoting *Ass'n for Cmty. Living v. Romer*, 992 F. 2d 1040, 1044 (10th Cir. 1993) (internal quotation marks omitted)).

The administrative remedies required by the IDEA include an impartial due process hearing and appeal process conducted pursuant to state law.  20 U.S.C. § 1415(f)-(g).  West Virginia has codified these procedures in W. Va. Code R. section 126-16-1, ch. 11.  Under those procedures, IDEA due process hearings are conducted by the West Virginia Department of Education (the "WVDOE").

On June 25, 2008, the plaintiffs filed a due process complaint with the WVDOE in accordance with West Virginia's IDEA dispute resolution regulations. (Compl. ¶ 25.) The plaintiffs subsequently entered into a settlement agreement resolving all of the IDEA-based issues raised in the due process complaint. (*Id.* at Ex. 2.) By filing a due process complaint with the WVDOE and by entering into a settlement agreement with the Board, the plaintiffs complied with state regulations and administratively resolved all of their IDEA-related issues.  The plaintiffs have not appealed, and do not seek to appeal, that settlement.  Contrary to the defendants' contentions, there is simply

nothing left for the plaintiffs to exhaust.

By filing their due process complaint and entering the settlement agreement, the plaintiffs have alleviated many of the concerns that are the basis for the administrative exhaustion requirement.  First, the plaintiffs are not attempting an end run around the IDEA's procedural requirements.  Rather, they have resolved their IDEA claims with the Board. Second, there is no concern for duplicitous adjudication.  The settlement agreement resolved all issues regarding Doe's FAPE, and I need not address claims relating to the adequacy of his education.  *See Doe*, 906 F. Supp. at 1100.  Finally, because I will not be addressing the adequacy of Doe's education, but will instead be addressing constitutional and statutory claims, additional administrative processes are unnecessary.  *See id.* (addressing these concerns).

Furthermore, the contention that the plaintiffs have not administratively exhausted their claims because the due process complaint covered only the years 2006-2007 is of no avail.  The Complaint is based on events starting on April 5, 2007.  Its reference to the 2003-2007 time frame merely establishes the period of Doe's enrollment at East Bank.  Morever, the Complaint alleges facts that mirror those alleged in the due process complaint.  Having exhausted their IDEA administrative remedies, the plaintiffs may proceed with their claims based on alternative theories of relief.

### C.  The Settlement Agreement

The defendants also argue that the settlement agreement bars the plaintiffs' claims.  They assert that the Complaint is based on factual allegations that were the foundation of the IDEA claims resolved by the settlement agreement.  Therefore, they contend, "the Plaintiffs are barred from alleging facts relating to the provision of education and related services because they are covered

8

by the settlement agreement." (Def. Board's Mem. Supp. Mot. Dismiss 7.)

The settlement agreement does not foreclose the plaintiffs' non-IDEA claims. The settlement agreement covers only the plaintiffs' IDEA claims. (Compl., Ex. 2 ¶¶ 1, 5, 11.) The remedies secured by the settlement agreement do not address any other injuries that the plaintiffs' may have suffered as a result of the defendants' conduct. (*Id.* ¶ 1, 3, 4, 9, 10, 11.) The plaintiffs expressly preserved their right to file claims in federal court that were not related to the IDEA. (Id. ¶ 17.) The settlement thus clearly contemplates future litigation based on these facts. Consequently, the settlement agreement does not bar the plaintiffs' claims.

Having disposed of the defendants' procedural arguments, I must now address the merits of the plaintiffs' claims.

## D.  The 42 U.S.C. § 1983 claims

Count I of the Complaint asserts that the defendants are liable under 42 U.S.C. § 1983 for violating the plaintiffs' constitutional rights of free speech, due process, and equal protection. The defendants argue that the plaintiffs' § 1983 claims are barred, because they are based on the defendants' alleged violation of the IDEA, and IDEA violations cannot serve as the basis of § 1983 claims. (Def. Board's Mem. Supp. Mot. Dismiss 8.)

The defendants' argument rests on a faulty and unduly expansive reading of the Fourth Circuit's decision in *Sellers by Sellers v. School Bd. of City of Mannassas*, 141 F.3d 524, 530 (4th Cir. 1998). In *Sellers*, the plaintiffs were asserting a § 1983 claim based on the defendants' failure to provide their son with a free appropriate public education under the IDEA. *Id.* at 529. The Fourth Circuit explained that this was an impermissible attempt to circumvent the IDEA. Although, § 1415(f) of the IDEA preserves claims "under the Constitution, the Rehabilitation Act, or other

9

federal statutes protecting the rights of youth with disabilities," even when those claims are "virtually identical to [IDEA] claims," it does not contemplate such claims under § 1983.  *Id.* at 530.  But, the court explained, "section 1415(f) does permit plaintiffs to resort to section 1983 for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under IDEA."  *Id.*

Section 1983 provides a civil cause of action against any person acting under the color of state law that deprives another "of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  *Sellers* recognized that a § 1983 claim is not foreclosed because it relies on facts that mirror those in an IDEA claim.  Rather, it simply held that the IDEA may not be the "law[]" on which a § 1983 claim is based.  *See id.*  Here, although the factual allegations in the Complaint are nearly identical to those resolved in the due process complaint, the plaintiffs's § 1983 claims are not based on IDEA violations.  They assert constitutional violations.  Such an action is permitted, and the defendants' contentions on this point must be rejected.

### 1.  Claims against Individuals

The plaintiffs' § 1983 claims are based on five incidents involving Doe that the plaintiffs allege occurred in 2007.  First, the plaintiffs allege that on May 15, 2007, Doe was not allowed to use the restroom, which caused him to subsequently defecate on himself in class (the "defecation incident").  Second, they assert that on June 1, 2007, teacher took Doe into a restroom and pulled his pants down to see if he had urinated on himself (the "restroom incident").  Third, the plaintiffs contend that the defendants sent letters home telling Doe's parents that he would be allowed to stay home while other students took a standardized test.  Fourth, the plaintiffs allege that the defendants violated Doe's rights when they did not give him assignments while other students took that

standardized test.  And finally, they assert that Doe was excluded from certain classes because of his disability.

The plaintiffs assert that the factual incidents listed above violated their constitutional rights. While the plaintiffs have not organized these claims as such, these claims may be reasonably grouped into four categories.  The first category of constitutional claims are under the First Amendment.  The plaintiffs assert that the defendants retaliated against them for exercising their free-speech rights.  The second category includes violations that can be fairly described as procedural due process claims.  By these claims, the plaintiffs assert that the defendants violated Doe's "Fourteenth Amendment right to be free from unreasonable, arbitrary and capricious disciplinary actions," as well as his "due process rights, including but not limited to his substantive due process right to bodily integrity."  (Compl. ¶ 25.)  The third category consists of the plaintiffs' equal-protection claims, whereby the plaintiffs contend that Doe was discriminated against because of his disability.  And the fourth category contains claims that the defendants violated Doe's Fourth Amendment right to be free from unreasonable searches.  I will address each category in turn.

### i. The Free-Speech Retaliation Claim

The First Amendment protects not only the affirmative right to free speech, but also the right to be free from retaliation by a public official for the exercise of that right. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000).  A plaintiff seeking recovery on a free-speech retaliation claim must establish three elements: (1) the plaintiff's right to speak was protected; (2) the plaintiff suffered some adverse action in response to her exercise of a protected right; and (3) a causal relationship between the plaintiff's speech and the defendant's retaliatory action.  *Id.* at 685-86.

The plaintiffs essentially allege that they were retaliated against because they engaged in two

forms of speech.  The first form of speech was Bess's act of complaining to the East Bank administration about the teachers' notes asking her to keep Doe home from school.  The second form of speech was the physical act of sending Doe to school.  As explained below, a claim based on the former is not plausible in light of the pleadings, and a claim based on the latter lacks legal support.

First, the plaintiffs assert that the teachers retaliated against Bess and her son because Bess complained to Strader about the notes that Doe's teachers had sent her.  The problem with this assertion, however, is that Bess did not complain about the teachers' notes until May 2007, after the defecation incident and the restroom incident had allegedly occurred.  Therefore, accepting the plaintiffs' allegations as true, these incidents could not have been retaliation for complaining about the notes—those incidents took place before Bess ever complained to Strader.

Second, the plaintiffs assert that the teachers retaliated against Doe because Bess ignored the teachers' notes and sent Doe to school.  This claim lacks merit because sending Doe to school was not an exercise of speech.  While the First Amendment protects non-verbal speech—so-called symbolic speech, *see Texas v. Johnson*, 491 U.S. 397 (1989) (recognizing that flag burning is protected speech)—the physical act of sending Doe to school hardly qualifies for First Amendment protection. To qualify as non-verbal speech, a court must determined that "an intent to convey a particularized message" was present, and that "the likelihood was great that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404 (internal alterations and quotation marks omitted).  Here, there is no indication that plaintiffs were seeking to communicate any message by sending Doe to school, nor is it plausible that the defendants would have understood any such message.  Therefore, the plaintiffs have failed to sufficiently allege free-speech retaliation by the defendants, and the motion to dismiss this claim is **GRANTED**.

12

### ii. The Procedural Due Process Claim

The plaintiffs' second category of allegations—that the defendants violated Doe's procedural due process rights—is also deficient.  The plaintiffs assert that the defendants violated Doe's "Fourteenth Amendment right to be free from unreasonable, arbitrary and capricious disciplinary actions," as well as his "due process rights, including but not limited to his substantive due process right to bodily integrity."  (Compl. ¶ 25.)

The Supreme Court has recently explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S.Ct. at 1949. And this court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-1950 (internal quotation marks omitted). Put simply, the plaintiffs' allegations "do not permit [this court] to infer more than the mere possibility of misconduct." *Id.* at 1950.  To sufficiently state a claim of unreasonable, arbitrary, or capricious disciplinary actions, the plaintiffs would need to allege that the defendants were attempting to discipline Doe in some manner—an allegation missing from the Complaint.  The plaintiffs have simply alleged that Doe's teachers asked his mother if she would mind keeping him home from school on a handful of days. The notes—which are attached to the plaintiffs' response to the motions to dismiss— reveal that the teachers were not telling Bess to keep Doe home, but merely giving her the option to do so.

Furthermore, there was no conduct in the alleged incidents that indicate a plausible claim for arbitrary, unreasonable, or capricious discipline.  The defendants said, with regard to the defecation incident, that Doe defecated on himself because he was trying to pass gas to get attention from his classmates and that the defecation was accidental.  (Compl., Ex. 2 ¶ 6.) And, with regard to the restroom incident, Doe's IEP called for Doe's teachers to assist him in using the restroom.  (*Id.* ¶

7.)  There is no plausible inference to be drawn that any of the incidents alleged constituted discipline on Doe, let alone arbitrary or capricious discipline that would rise to a Fourteenth Amendment violation.  Therefore, this claim fails to state a claim upon which relief may be granted, and the motion to dismiss this claim is **GRANTED**.

### iii.  The Equal Protection Claim

The plaintiffs' third category of claims—that Doe was denied equal protection—must likewise be rejected.  Disability is not a protected class entitled to heightened scrutiny under the Constitution. *See Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985).  An equal-protection claim based on disability discrimination must be rejected unless the plaintiffs show that there was no rational basis for the defendants' actions.

Here, there was clearly a rational basis for the defendants' actions with regard to the defecation incident, the restroom incident, and for excluding Doe from certain classes at school. Doe is a special-needs child who requires more attention from the teachers than other children who do not have special needs.  Furthermore, there was a rational basis for the defendants' alleged decision to give Bess the option of keeping Doe home on various occasions, as Doe's special needs may have overwhelmed teachers on certain occasions.  Although such conduct may contravene Doe's IEP, it does not violate the Constitution.  The defendants had a rational basis for their actions, and the plaintiffs have failed to sufficiently allege that Doe was denied equal protection.  The motion to dismiss this claim is hereby **GRANTED**.

### iv.  The Unreasonable Search Claim

Finally, the fourth category of allegations assert that Doe's Fourth Amendment rights were violated when, after observing that Doe's pants were wet, a teacher took Doe into the restroom to

determine whether he had urinated on himself.  This claim must also fail.  Consent is an exception

to an unlawful search under the Fourth Amendment.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219

(1973).  By the IEP, Doe's parents consented that teachers assist Doe in using the restroom.  As

such, there was consent, and Doe's Fourth Amendment rights were not violated.[2]  Therefore, the

defendants motions to dismiss the § 1983 claim based on the Fourth Amendment is **GRANTED**.

### 2.  Claims against the Board

As explained above, the plaintiffs have not sufficiently alleged that their constitutional rights

were violated.  As such, I **GRANT** the defendants motion to dismiss the § 1983 claims against the

Board.[3]

---

[2]Having concluded that the plaintiffs have failed to sufficiently allege that the defendants violated any constitutional right, the defendants are entitled to qualified immunity on the § 1983 claim.  *See Pearson v. Callahan*,129 S.Ct 808, 815 (2009).  In light of Doe's IEP, these acts cannot be construed as violating clearly established rights that a reasonable person would know. Doe is a special-needs child who, pursuant to his rights under the IDEA, required specialized attention from his teachers.  The Fourth Circuit has explained that "a constitutional right is clearly established when its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ridpath*, 447 F.3d at 313 (internal quotation marks omitted).  Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* The "salient question" is whether the state of the law at the time of the events in question gave the officials "fair warning" that their conduct was unconstitutional. *Id.* The court can identify no case ruling that actions similar to the defendants' are unconstitutional.  Even assuming that the defendants have violated the plaintiffs' rights, those rights were no so clearly established that a reasonable official would know that these actions would violate them.

[3]Even if the plaintiffs have alleged constitutional violations, the § 1983 claim against the Board must nonetheless fail.  A supervisory entity is only liable under § 1983 if the entity's custom or policy led to the constitutional violation that caused the plaintiff's injury.  *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 694 (1978); *see Andrews S. v. Sch. Comm. of the Town of Greenfield, Mass.*, 59 F. Supp. 2d 237, 246-47 (D. Mass. 1999) (explaining that for a § 1983 action to be available based on allegations similar to IDEA claims, the plaintiff must show that the plaintiff's injury was caused by a custom or policy of the municipal entity).  The plaintiffs have not alleged that any of these alleged acts were supported by the Board's custom or policy.

**F. The ADA and § 504 Claims**

The plaintiffs have asserted ADA and § 504 claims against the individual defendants in their personal and official capacities, as well as against the Board.  (Compl.)  As explained below, the motions to dismiss the personal- and official-capacity suits against the individual defendants are **GRANTED**.  The motion to dismiss these claims against the Board, however, are **DENIED**.

**1.  Individual-capacity claims against the Individual Defendants**

The plaintiffs' ADA claims must be dismissed against the individual defendants in their personal capacities.  Personal-capacity damages are generally not available under the ADA.  *Baird v. Rose*, 192 F.3d 462, 471-72 (1999); *see also Butler v. City of Prarie Ridge*, 172 F.3d 736, 744 (10th Cir. 1999) ("The ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition.").  A ruling to the contrary could raise significant constitutional questions.  *See Rendelman v. Rouse,* 569 F.3d 182, 189 (4th Cir. 2009) (discussing the potential limits of the reach of federal statutes passed pursuant to the Spending Power).  Furthermore, "[t]he ADA and Rehabilitation Act generally are construed to impose the same requirements," and "[b]ecause the language of the Acts is substantially the same, we apply the same analysis to both."  *Id.* at 468 (quoting *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1264 n. 9 (4th Cir.1995)).  Thus, personal-capacity damages against individual defendants are not authorized by § 504.

Here, the plaintiffs have sued the individual defendants in their individual and official capacities, but it is unclear what personal-capacity relief, if any, the plaintiffs are seeking.  In any event, any personal-capacity actions against the individual defendants under the ADA or § 504 must be dismissed because the individual defendants are not subject to such liability under those acts.  *See*

16

*Bracey v. Buchanan*, 55 F.Supp.2d 416, 420 (E.D. Va.1999) (dismissing personal-capacity action pursued under § 504 and the ADA).

### 2.  Official-capacity claims against the Individual Defendants

Furthermore, the ADA claims against the individual defendants in their official capacities must be dismissed for a lack of standing.  An official-capacity suit is a suit for injunctive relief.  To have standing to sue for injunctive relief, a plaintiff must show a likelihood of future injury.  *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983).  The individual defendants work at East Bank. Doe is now seventeen years old and enrolled in high school.  It is not likely (nor has Doe argued that it is likely) that Doe will return to East Bank.  Because Doe cannot show that there is a likelihood that he will again be enrolled at East Bank or taught by these teachers—and thus injured by these defendants—there is no likelihood of future injury, and he lacks standing to sue them for injunctive relief.  I therefore **GRANT** the defendants motions to dismiss the ADA and § 504 claims against the individual defendants

### 3.  Claims against the Board

Doe's ADA and § 504 claims may, however, proceed against the Board.  The ADA and § 504 authorize damage awards against public entities and recipients of federal funds, respectively. *See Barnes v. Gorman*, 536 U.S. 181, 186-87 (2002) (discussing scope of remedies available under the ADA & § 504).  Furthermore, Doe possesses standing to sue the Board for injunctive relief, as he is still a student within that school system, and may be subject to future injury.

The Fourth Circuit has explained that "[t]he ADA and [§ 504] generally are construed to impose the same requirements due to the similarity of the language of the two acts." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999).  The two statutes differ, however, in at least one

important respect.  Proving discrimination under § 504 requires "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA]." *Sellers*, 141 F.3d at 529.  To establish a § 504 violation, plaintiffs "must prove that they have been discriminated against—that they were excluded from the employment or benefit *due to discrimination* solely on the basis of the disability." *Id.* (internal quotation marks omitted).  In the context of the education of handicapped children, "either bad faith or gross misjudgment" must be shown in order to prove a violation of § 504 or the ADA. *Id.*  Thus, under § 504, the plaintiff must prove that his disability was the "but for" cause of the discriminatory actions.  Under the ADA, however, the Fourth Circuit has held that the plaintiff need only "allege that discrimination on the basis of her disability was a motivating factor" for the defendants' conduct.  *Baird*, 192 F.3d at 470.

Here, the plaintiffs allege more than the defendants' poor educational decisions such as a failure to diagnose disability or a failure to implement the IEP.  *See Sellers*, 141 F.3d at 529.  The plaintiffs allege that Doe was excluded from school and from other educational activities because of his disability.  (Compl. ¶ 10-12, 16.)  These allegations, if proven, would support a claim for disability discrimination under the ADA or § 504.  Accordingly, the plaintiffs have stated a claim under the ADA and § 504 of the Rehabilitation Act and I **DENY** the defendants' motion to dismiss those claims as they are alleged against the Board.

## G.  The State Law Tort Claims

In addition to federal claims, the Complaint asserts several state tort claims against the defendants.  I address these claims below.

### 1.  West Virginia Human Rights Act

The plaintiffs next assert that "Defendants discriminated against Plaintiff Doe because of his

disability, by failing to provide reasonable accommodations, segregating Plaintiff Doe from other students, humiliating and embarassing him, and committing acts of reprisal against Plaintiff Doe and Tammy Bess," in violation of the West Virginia Human Rights Act (the "WVHRA").  (*Id.* ¶ 34.)

The WVHRA provides that it "shall be unlawful discriminatory practice . . . [f]or any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to . . . [r]efuse, withhold from or deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations[.]" W. Va. Code § 5-11-9(6)(A).  To state a claim for breach of the duty of reasonable accommodation under the WVHRA, a plaintiff must allege the following elements: (1) the plaintiff is a qualified person with a disability; (2) the defendant was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.  *Baisden v. W. Va. Secondary Sch. Activities Com'n*, 568 S.E.2d 32, 39 (W. Va. 2002).  Furthermore, the defendant must have been "an agent or employee of any place of public accommodations."  W. Va. Code § 5-11-9(6)(A)

Here, Doe is a "qualified person" under the WVHRA.  The defendants—his teachers, his principal, and the Board—were aware of his disability, as evidenced by their involvement in developing his IEP.  Doe required an accommodation, namely special treatment from teachers (also shown in his IEP).  A reasonable accommodation existed that met Doe's needs, the defendants knew of Doe's need and of the accommodation, and Doe alleges that the defendants failed to provide that

19

accommodation.   Furthermore, the defendants, employees of a public school system, were "employees of [a] place of public accommodation."  Therefore, the plaintiffs have sufficiently stated a claim under the WVHRA, and I **DENY** the defendants' motions to dismiss this claim.

### 2.  Violation of Statutes

Next, the plaintiffs assert that they were "injured by Defendants' violation of statutes, including but not limited to the Defendants' violation of WV Code § 18-8-7 (inducing or attempting to induce Plaintiff Doe to absent himself from school), and WV § 61-2-9 for assault and battery, and they may recover under WV Code § 55-7-10."  (Compl. ¶ 30).

It is not clear what cause of action the plaintiffs are pursuing by this claim.  West Virginia Code section 55-7-10 has no apparent applicability in this case.  That statute replaces the trespass cause of action with the cause of action for trespass on the case.  The plaintiffs have not identified a single judicial decision recognizing such a cause of action in West Virginia.  Furthermore, the other statutes identified by the plaintiffs in this claim are criminal statutes that have not been recognized as giving rise to tort liability.  This claim thus fails to state a claim for which relief may be granted, and I thus **GRANT** the defendants' motions to dismiss this claim.

### 3.  Negligent Hiring, Retention, and Supervision

In their claim for negligent hiring, retention, and supervision, the plaintiffs simply assert that "Defendants are also liable for negligent hiring, retention, and supervision of its [sic] employees." (*Id.* ¶ 38.) The plaintiffs do not, however, allege facts that show they are entitled to relief.  Beyond offering a conclusory statement that they are entitled to relief, the plaintiffs do not allege that how the defendants failed to exercise reasonable care in hiring, retaining, or supervising employees. These claims are simply insufficient to state a claim for which relief may be granted.  The motion

20

to dismiss this claim is therefore **GRANTED**.

### 4.  Assault and Battery

Aside from the restroom incident, the plaintiffs do not allege any facts supporting an allegation of assault or battery.  A valid consent defeats both an assault and a battery claim.  *See* Restatement (Second) of Torts § 13 cmt. d ("[T]he absence of consent is a matter essential to [assault and battery], and it is uniformly held that it must be proved by the plaintiff as a necessary part of his case.").  Here, at the time of this incident, "monitoring/assistance in restroom" was part of Doe's IEP.  (Compl., Ex. 2 ¶ 7 )  There is no allegation that any defendant went beyond what was called for by the IEP.  There was thus no assault or battery. I thus **GRANT** the motions to dismiss this claim.

### 5.  Emotional Distress

The plaintiffs next claim that they "suffered severe emotional distress as a result of the Defendants' acts, which were atrocious, and utterly intolerable in a civilized society." (Compl.  ¶ 36.)  West Virginia recognizes a cause of action for infliction of emotional distress, or "outrage."  To prevail on an outrage claim, a plaintiff must allege facts that show the defendant, "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to another." *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998) (internal quotation marks and citations omitted).  The plaintiffs have not alleged facts amounting to "extreme and outrageous conduct" by the defendants, and the motions to dismiss this claim are **GRANTED**.

## V.  Conclusion

In summary, the court **GRANTS** in part, and **DENIES** in part, the defendants' motions to dismiss.  Defendant Sandy Boggs is **DISMISSED** as a defendant.  Based on the pleadings, only

claims from Count IV of the Complaint survive the defendants' motions.  The ADA and Rehabilitation Act claims may proceed against the Board, and the claim under the West Virginia Human Rights Act may proceed against the Board and the remaining individual defendants.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 17, 2009

Joseph R. Goodwin, Chief Judge